UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **ANNIKA WILLIAMS o/b/o G.L.** | * | **DOCKET NO. 06-1094** |
| **VERSUS** | * | **JUDGE JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED** and this matter **DISMISSED** with prejudice.

## BACKGROUND

On January 20, 2005, plaintiff, Annika Williams, filed the instant application for Supplemental Security Income (SSI) benefits on behalf of her minor son, G.L. (claimant). (Tr. 40-42).[1] Plaintiff alleged that G.L. became disabled as of August 1, 2003, due to attention deficit hyperactivity disorder. (Tr. 40, 32).[2] The claim was denied at the initial stage of the administrative process. (Tr. 30, 32-34). Accordingly, plaintiff requested, and received a January 9, 2006, hearing, before an Administrative Law Judge ("ALJ"). (Tr. 139-154). However, by

---

[1] The court refers to the minor by his initials in accordance with LR 5.82W and the E-Government Act of 2002.

[2] G.L. was born on September 15 ,1998. (Tr. 40).

decision dated March 31, 2006, the ALJ found that G.L. was not disabled under the Social Security Act. (Tr. 9-24). Plaintiff appealed the adverse decision to the Appeals Council. On May 12, 2006, the Appeals Council denied the request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On June 28, 2006, Williams sought review before this court. She contends that the ALJ's determination that G.L.'s impairments do not functionally equal a listed impairment is not supported by substantial evidence.

## **STANDARD OF REVIEW**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its

judgment for that of the Secretary.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, 110 Stat. 2105, which amended 42 U.S.C. §1382c(a)(3).  Pursuant to this law, a child under the age of eighteen is considered disabled for purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §1382c(a)(3)(C)(I) (1997).

The regulations set forth a three-step process for a child seeking benefits.  First, the ALJ must determine if the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924.  If the child is not so engaged, then the ALJ determines whether the child has a medically determinable impairment(s) that is severe.  *Id.*  An impairment(s) will not be deemed severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."  *Id.*  Finally, an impairment(s) that is severe must also meet, equal, or functionally equal a listed impairment.  *Id.*

## DISCUSSION

The ALJ determined that G.L. had not engaged in substantial gainful activity since the alleged onset date.  (Tr. 15).  He further found that G.L. suffers from severe impairments of attention deficit hyperactivity disorder and conduct disorder.  *Id.*  However, the ALJ concluded that these impairments neither met nor medically equaled a listed impairment.  *Id.*  Accordingly, he proceeded to consider whether G.L.'s impairments functionally equaled a listed impairment.

The regulations provide that an impairment is functionally equivalent to a listed

impairment if it results in an extreme limitation in one domain of functioning or marked limitations in two domains.  20 C.F.R. § 416.926a.[3]  The domains include:  (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b).

      The ALJ determined that G.L. exhibited less than marked limitations in the domains of "acquiring and using information," "attending and completing tasks," "interacting and relating with others," and "caring for yourself."  (Tr. 18-24).  He found no limitations in the remaining two domains.  *Id*.  Because the claimant did not have two marked limitations or one extreme limitation of functioning, the ALJ concluded that G.L. did not have an impairment that functionally equaled any of the impairments listed in Appendix 1, Subpart P, of Regulation No. 4.  (Tr. 16).

      Plaintiff primarily challenges the findings of the non-examining agency physician, William Berzman, Ph.D., as reflected in a March 21, 2005, Childhood Disability Evaluation Form.  (Tr. 104-109).[4]  However, the record contains other evidence that is consistent with Dr.

---

[3] An "extreme" limitation is assessed when the impairment(s) interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities.  20 C.F.R. §416.926a(e)(3).  Day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities.  *Id*.  An "extreme" limitation is equivalent to standardized test scores that are at least three standard deviations below the mean.  *Id*.
    The term "marked" may be established when a claimant's impairments seriously interfere with the claimant's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2). "Marked" limitation also refers to a limitation that is more than "moderate," but "less than extreme."  *Id*.  A "marked" limitation is equivalent to standardized test scores that are at least two, but less than three standard deviations below the mean.  *Id*.

[4] Berzman indicated that G.L. had less than marked limitations in all domains.  (Tr. 104-109).

4

Berzman's opinion, and which substantially supports the ALJ's decision. For instance, G.L.'s kindergarten teacher indicated that he had less than serious problems in the domain of "acquiring and using information." (Tr. 69). In fact, when listening, G.L. usually answered questions correctly. *Id*. G.L.'s intelligence was estimated in the low average range. (Tr. 114-117).[5]

In the domain of "attending and completing tasks" G.L.'s teacher stated that he could work independently. (Tr. 70). She acknowledged that he sometimes had trouble staying on task, but indicated that he had less than serious problems in a majority of activities. *Id*. Furthermore, on January 20, 2005, G.L.'s mother completed a form stating that he keeps busy on his own, he finishes things that he starts, he works on arts and crafts projects, he completes homework, and he completes chores most of the time. (Tr. 56).[6]

In the domain of "interacting and relating to others" G.L.'s teacher noted that he had only slight or no problems in 10 of 13 activities. (Tr. 71). Moreover, G.L.'s mother acknowledged that he had friends his own age, could make new friends, and generally got along well with other adults. (Tr. 54).

In the domain of "moving about and manipulating objects" G.L.'s teacher observed only one serious problem out of seven activities. (Tr. 72). The record also reveals that G.L. can walk, run, throw a ball, ride a bike, jump rope, use roller skates, use scissors, work video game controls, and dress/undress dolls or action figures. (Tr. 53).

---

[5] G.L.'s language test scores were less than two standard deviations below the mean. (Tr. 94).

[6] Six days later, his mother completed another form indicating that G.L. did not finish things that he starts. (Tr. 66).

In the domain of "caring for yourself" G.L.'s teacher noted serious or very serious problems in most categories. (Tr. 73). However, when G.L. takes his medication on a daily basis he is calm. (Tr. 75). G.L. is also able to take care of his personal needs. (Tr. 55). He obeys safety rules and does what he is told most of the time. *Id.*

In the domain of "health and physical well-being" G.L.'s physical and systemic examinations were normal. (Tr. 103).

Plaintiff refers the court to a description of G.L.'s symptoms contained in a neuropsychiatric evaluation completed by Herbert Vandenberg, M.D., on April 22, 2005. (Tr. 114-117). However, the description of symptoms was a "history" of his illness provided by G.L.'s family. *Id.* Dr. Vandenberg concluded that G.L.'s symptoms were of moderate severity and opined that his prognosis was fair if he remained compliant with aftercare.[7]

The court observes that plaintiff submitted additional evidence to the Appeals Council. (Tr. 118-138). This evidence constitutes part of the instant record – provided that it was new, material and related to the period before the ALJ's decision. *See, Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[8] However, the evidence appears to be merely cumulative. *See, Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989). Moreover, the evidence is

---

[7] Vandenberg assigned a Global Assessment of Functioning ("GAF") rating of 60 which denotes moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition DSM-IV, p. 32.

[8] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

not "material"; *i.e*., relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *Id.* Although the post-decisional evidence documents several days of misbehavior at school, the teacher's notes often indicate that G.L. had not taken his medication on those days. (Tr. 118-138). Moreover, the absence of notes for the vast majority of school days between September 2005 and April 2006, implies that G.L. was compliant on those days.

In sum, the undersigned finds that the ALJ's determination that claimant was not eligible for benefits because his impairments did not meet, equal or functionally equal any impairment in Appendix 1 to Subpart P of Social Security Administration Regulations No. 4 is supported by substantial evidence and is free of legal error. *Id*. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR,**

**FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 12th day of March, 2007.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE